UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHARLES F.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

19-CV-1664-LJV
DECISION & ORDER

---

On December 13, 2019, the plaintiff, Charles F. ("Charles"), brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On June 18, 2020, Charles moved for judgment on the pleadings, Docket Item 9; on August 10, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 11; and on August 31, 2020, Charles replied, Docket Item 12.

For the reasons stated below, this Court grants Charles's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the [Administrative Law Judge ("ALJ")] applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Charles argues that the ALJ erred in two ways. Docket Item 9-1. First, Charles argues that the ALJ erred in failing to evaluate the June 17, 2016, and November 28, 2016, medical opinions of his treating physician assistant, Alice M. Barber, PA. *Id.* at 8.

2

Second, he argues that the ALJ erred in failing to consider whether a cane was medically necessary. *Id.* at 11. This Court agrees that the ALJ erred and, because that error was to Charles's prejudice, remands the matter to the Commissioner for proper consideration of PA Barber's opinions and Charles's use of a cane.

## I.     PA BARBER'S OPINIONS

When determining a claimant's RFC, "the Commissioner must consider all medical opinions" received.[3] *Christopher M. V.*, 2021 WL 804258, at *3 (Mar. 3, 2021) (citing *Andrew v. Comm'r*, 2020 WL 5848776, *5 (N.D.N.Y. Oct. 1, 2020) (quoting 20 C.F.R. § 404.1520c(a)-(c))). But the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[s]." 20 C.F.R. § 404.1520c(a). Instead, the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions." *Id.* § 404.1520c(b). "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment[s] and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in . . . [the claimant's] ability to perform [the physical and mental] demands of work activities." *Id.* § 404.1513(a)(2).

The Code of Federal Regulations lists five factors that the ALJ must consider when weighing medical opinions: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency,

---

[3] An ALJ's review of medical evidence for disability claims filed on or after March 27, 2017, is governed by 20 C.F.R. § 404.1520c. *See* Revisions to the Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017).

purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "that tend to support or contradict" the opinion. *See id.* § 404.1520c(c)(1)-(5). An ALJ specifically is required to "explain how [he or she] considered the supportability and consistency factors"—because they are "the most important factors"—and "may, but [is] not required to, explain how [he or she] considered the [remaining] factors." *Id.* § 404.1520c(b)(2). Even though an ALJ need not explain each factor that he or she considered, the ALJ still "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that ' . . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (third alteration in original) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004)).

Some opinions of medical providers, however, are not "medical opinions" as that term of art is used in the Social Security context. Disability and other benefits decisions made by other governmental agencies—"such as the Department of Veterans Affairs" ("VA")—are made "for their own programs using their own rules . . . [and therefore are] not binding on [the Commissioner]." 20 C.F.R. § 404.1504. In fact, other agencies' disability determinations are "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled or blind under the Act, [so the ALJ] will not provide any analysis about how [he or she] considered such evidence in [his or her] determination or decision." *Id.* §§ 404.1520b(c), 416.920b(c). Nonetheless, in such a circumstance, the ALJ still must "consider all of the supporting evidence underlying" other agencies' disability determinations. *Id.* § 404.1504.

> Here, the ALJ found that Charles has the RFC
>
> > to perform light work as defined in 20 CFR [§] 404.1567(b)[,] except he can occasionally reach overhead to the left and to the right[; he] can occasionally climb ramps, stairs, ladders, ropes, or scaffolds[; and he] can occasionally balance, stoop, kneel, crouch, and crawl.

Docket Item 6 at 25.  In reaching this conclusion, the ALJ did not discuss or articulate how persuasive he found PA Barber's June 17, 2016, or November 28, 2016, opinions. Instead, he said only that

> the medical opinions with regard to disability through the [VA] . . . [are] inherently neither valuable nor persuasive in accordance with 20 CFR [§§] 404.1520b(c) and 416.920b(c)[, and] these statements were conclusory statements of the claimant's "disability" without reference to any specific limitations.

*Id.* at 31 (internal citations omitted) (citing "Exhibit 3F, pages 399, 441" [Docket Item 6 at 808, 850]).

The ALJ was correct that he did not have to weigh or discuss the VA's ultimate decision that Charles was 100% disabled or unable to work.  *See, e.g., id.* at 503. Indeed, the specific pages that the ALJ cited were the disability determinations by the VA.  *See id.* at 808 (finding Charles "totally disabled"); *id.* at 850 (opining that Charles was "unable to work").

But PA Barber's opinions were not disability determinations.  On the contrary, they were medical opinions rendered after two pension and compensation examinations, and they explained how Charles's impairments affected his ability to work.  *See, e.g., id.* at 221, 248 (finding that after sitting for one to two hours Charles had hip pain and had to elevate his legs); *id.* at 225, 236 (finding that Charles's hip and heel pain "significantly limit[ed] [his] functional abilit[ies]"); *id.* at 230, 241 (finding that the amount of sitting in Charles's "sedentary" job caused him pain).  And because they

5

were the "supporting evidence underlying" the VA's ultimate disability decision, they were precisely the sort of evidence that the ALJ was obliged to consider under section 404.1504. *See* 20 C.F.R. § 404.1504 ("However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim."). Indeed, the ALJ not only was required to consider PA Barber's medical opinions, he also was required to "articulate" in his decision how persuasive he found them—explicitly "explain[ing] how [he] considered [at least] the supportability and consistency factors." *See id.* § 404.1520c(b)(2).

The "ALJ['s] failure to discuss, or even acknowledge, [PA Barber's medical opinions] was legal error." *Christopher M. V.*, 2021 WL 804258, at *4; *see also Stack v. Comm'r*, 2020 WL 5494494, *4-*6 (W.D.N.Y. Sept. 11, 2020) (finding that, although not required to accept the VA's determination of disability, the ALJ nonetheless "committed legal error in failing to address the functional assessments from the . . . examination[]" of a physician). And that was no small error here. Several of PA Barber's findings call into question Charles's ability to perform light work as the RFC contemplated.

Light work "requires a good deal of walking or standing, or [] it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). PA Barber found that Charles was limited in his ability to stand, walk, and sit, however, due to issues with his hips, left knee, and right foot. *See*, *e.g.*, Docket Item 6 at 217, 230, 237. For example, PA Barber found that Charles had an abnormal, antalgic gait and "drag[ged] [his] left leg by pivoting the body." *Id.* at 244. PA Barber also observed that Charles used a cane "[c]onstant[ly]" due to his "back

6

pain/radiculopathy, bil [sic] hip, [l]e[ft k]nee[,] and r[ight] foot pain." *Id.* at 237, 247. And PA Barber found that Charles could not sit for prolonged periods without pain; in fact, Charles needed to elevate his legs after he sat for one to two hours, and after eight hours he had "pain going down both legs." *Id.* at 241, 248.

PA Barber's opinions therefore appear to conflict with the RFC, which would require Charles to perform "a good deal of walking or standing" or, alternatively, "sitting most of the time . . . [with] leg controls." *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). And when "'[an] omitted medical opinion[] contradict[s] the ALJ's RFC determination,'" "[the] ALJ's failure to evaluate [that] medical opinion is not harmless error." *Manuel v. Comm'r of Soc. Sec.*, 2020 WL 2703442, at *3 (May 26, 2020) (citing *Parks v. Colvin*, 2017 WL 279558, at *4 (W.D.N.Y. Jan. 23, 2017)).[4] For that reason, the ALJ's error requires remand.

---

[4] Weighing the section 404.1520c(c) factors, the ALJ also could have found that PA Barber's opinions deserved considerable weight. PA Barber's opinions certainly were consistent with the record, which demonstrated considerable back, knee, and leg pain. *See, e.g.*, Docket Item 6 at 406 (Russell Lee, M.D., opining that Charles was "moderate[ly] limit[ed] for activities involving prolonged standing, walking great distances, climbing stairs, bending, lifting, and carrying heavy objects"); *see also* 20 C.F.R. § 404.1520c(c)(2) (considering the consistency of the opinion with the record). PA Barber's opinions also were well supported and based on in-person examinations. *See* Docket Item 6 at 215, 249; *see also* 20 C.F.R. § 404.1520c(c)(1) (considering the opinion's support). And PA Barber's opinions were rendered with the purpose of determining how Charles's impairments affected his ability to work. *See* Docket Item 6 at 216-17, 249-50; *see also* 20 C.F.R. § 404.1520c(c)(3)(iii) (considering the purpose of the treating relationship). Indeed, compensation and pension exams are "highly relevant and probative" to whether an individual is disabled under the Act, *see Scott v. Berryhill*, 2018 WL 6582794, at *5 (W.D.N.Y. Dec. 14, 2018); *Biggins v. Comm'r of Soc. Sec.*, 2019 WL 4688733, at *4 (W.D.N.Y. Sept. 26, 2019), and the revised regulations acknowledge exactly that, *see* Revisions to the Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-1, 5848 (explaining that because "underlying evidence that other governmental agencies and nongovernmental entities use to support their decisions may be probative of whether an individual is disabled or blind under the Act[,] . . . [the Commissioner will consider] in [his]

## II.  CHARLES'S USE OF A CANE

For a cane to be medically necessary, "there must be medical documentation establishing the need for [the cane] to aid in walking or standing[] and describing the circumstances for which it is needed."  See SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).  If those factors are present, the ALJ must incorporate the claimant's use of the cane into the RFC.  See Scott v. Berryhill, 2018 WL 4442882, at *5 (W.D.N.Y. Sept. 17, 2018).  And when there is medical documentation about a cane in the record, an ALJ's failure to determine whether the cane is medically necessary or to incorporate the use of a cane into the RFC is legal error.  See, e.g., id. at *6 (remanding because the ALJ failed to properly consider whether the plaintiff's cane was medically necessary and the plaintiff's cane use was not incorporated into the RFC).

Charles used a cane for "balance and weightbearing."  Docket Item 6 at 404.  In fact, he testified at the hearing that he had been "either in a wheelchair, using crutches to walk[,] or using a cane" since 2016.  Id. at 48.  Charles said that he could not walk without the help of a cane until about six months before the May 15, 2019 hearing, and that "to do a lot of stairs . . . [he] still ha[d] to use the cane."  Id.  Treatment notes from Charles's providers corroborated his use of a cane during the relevant time period.  See e.g., id. at 330, 710, 722.  And in addition to PA Barber's observation that as of November 28, 2016, Charles used a cane "constant[ly]," see supra, on June 1, 2018, Russell Lee, M.D., opined that a cane was "medically necessary," id. at 404.

---

determination or decision the relevant supporting evidence underlying the other governmental agency or nongovernmental entity's decision").

The ALJ acknowledged this history of cane use in passing.  S*ee id.* at 27-30.  But he neither used the medical records and opinions to evaluate whether Charles still needed a cane nor incorporated Charles's use of a cane into the RFC.  The failure to do one or the other was a second error. *See, e.g.*, *Rowe v. Berryhill*, 2018 WL 4233702, at *4 (W.D.N.Y. Sept. 6, 2018) (remanding in part because the ALJ failed to properly consider whether the plaintiff's self-initiated use of a cane as a protective measure was medically necessary).

What is more, the ALJ did not ask Charles about his cane use or otherwise seek clarification about Charles's ability to walk or balance unassisted.  Likewise, the vocational examiner did not address whether the jobs that he identified could be performed by someone who needed a cane to walk or balance.  So the ALJ not only failed to address whether Charles needed a cane, he also failed even to consider how a cane might impact Charles's RFC.  For those reasons, the ALJ's failure was not harmless error.  *See* SSR 96-9p, 1996 WL 374185, at *7 (explaining that "the occupational base for an individual who must use [a cane] for balance . . . may be significantly eroded"); *see also Zidanich v. Colvin*, 2016 WL 6275233, at *4 (Oct. 27, 2016) (explaining that when a claimant "needs to use a cane for support and balance, it means that at least one hand is not free to hold other objects and perform the lifting and carrying requirements of light work, which are not minimal").

The Commissioner argues that "the ALJ obviously considered [the cane] as the decision contains multiple references to testimony and medical evidence regarding ambulation." Docket Item 11-1 at 18.  But if the ALJ in fact considered whether a cane was medically necessary and decided that it was not, his conclusion and reasoning are

9

missing. Because the ALJ did not make an explicit finding about Charles's use of a cane, this Court does not know whether the ALJ failed to consider the evidence about a cane; found that a cane was not medically necessary; found that a cane was medically necessary but did not impact Charles's RFC; or reached some other conclusion. It is foundational principle of administrative law that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *see also Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (quoting another source) (noting that courts "may not accept . . . *post hoc* rationalizations for agency action"). So the Commissioner's belated attempt to salvage the RFC lacks merit.

   The Commissioner also argues that because Charles's need for a cane was "temporary," the ALJ was not requited to account for it in the RFC. Docket Item 11-1 at 17. The error here, however, was not that the ALJ was required to include a cane-use limitation in the RFC; the error was in not addressing whether use of a cane might preclude Charles from doing the work that the RFC suggested he could. What is more, the record belies the Commissioner's suggestion that Charles's cane use was "temporary." Charles still was using a cane for walking at the time of the hearing, albeit not as often as he once was. *See id.* at 48 (Charles testifying that he still required the cane when "do[ing] a lot of stairs"). And there do not appear to be any medical opinions in the record finding that Charles no longer needed a cane. The Commissioner's argument here therefore fails as well.

**CONCLUSION**

The matter is remanded for the ALJ's consideration of PA Barber's opinions and Charles's use of a cane.  On remand, the ALJ must explain how he considered PA Barber's opinions, explicitly addressing at least how well supported they are and how consistent they are with the record.  See 20 C.F.R. § 404.1520c(b)(2).  And the ALJ also must consider whether a cane is medically necessary and, if it is, incorporate Charles's use of a cane into the RFC.  See SSR 96-9p, 1996 WL 374185, at *7

The Commissioner's motion for judgment on the pleadings, Docket Item 11, is DENIED, and Charles's motion for judgment on the pleadings, Docket Item 9, is GRANTED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:      March 15, 2021
            Buffalo, New York

                                         /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE